IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| LaShay Y. McDuffie-Smithson, | ) | C/A No. 3:11-190-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| University of South Carolina School of Medicine; Ms. Pamela Cooper; and Dr. Robert Price, Sr., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff McDuffie-Smithson, who is self-represented, filed this employment case against the named defendants. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 27.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised McDuffie-Smithson of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to the defendants' motion. (ECF No. 29.) McDuffie-Smithson filed a response in opposition. (ECF No. 32.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to McDuffie-Smithson, to the extent they find support in the record. McDuffie-Smithson was employed by the University of South Carolina School of Medicine in the Instrumentation Resource Facility from May 2005 to August 2009. McDuffie-Smithson performed administrative duties in

a relatively small working environment. She was supervised by Dr. Robert Price and worked with a research specialist named Pamela Cooper. Although McDuffie-Smithson and Cooper initially enjoyed a good working relationship when Cooper began working for the defendant in January of 2008, according to McDuffie-Smithson, after one of their co-workers died in July of 2008 Cooper began treating McDuffie-Smithson in a racially hostile manner.

As part of her duties, McDuffie-Smithson was responsible for ordering laboratory supplies and occasionally purchasing cleaning and other office supplies from local retailers using a University-issued credit card. McDuffie-Smithson was not authorized to purchase personal items and charge them to her employer's credit card; nevertheless, she admits that she occasionally did so. Dr. Price counseled her about using the credit card for personal items, yet McDuffie-Smithson continued to purchase certain unauthorized items and charge them to her employer's credit card. When confronted again about the suspected misuse, she altered receipts to hide the unauthorized purchases. On August 12, 2009, Dr. Price terminated her employment on the stated ground of misuse of her employer's credit card and falsifying records. Approximately six months later, McDuffie-Smith filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging harassment by Cooper and discriminatory discharge. (See generally ECF No. 27-4 at 2.) After receiving a right-to-sue letter, McDuffie-Smithson filed this action.

# DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there

*PJG*

will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory"). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every

[discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

C.  **McDuffie-Smithson's Claims**

Defendants Price and Cooper correctly assert that they cannot be held individually liable under Title VII. See Lissau v. So. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998). They are therefore entitled to summary judgment on McDuffie-Smithson's Title VII claims.

The University is similarly entitled to summary judgment on McDuffie-Smithson's Title VII claims for disparate treatment based on race and for harassment. To establish a *prima facie* case of discrimination based on disparate discipline, a plaintiff must show: (1) that she engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against her were more severe than those enforced against the other person. Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008). Similarly, to establish a *prima facie* case of Title VII discrimination with regard to a disciplinary discharge, a plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for the job and that her job performance was satisfactory; (3) that she was discharged; and (4) that other employees outside the protected class were retained under similar circumstances. Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995). To prevail on either theory, McDuffie-Smithson must show that white employees who were similarly situated to her were treated more favorably. See Lightner, 545 F.3d at 264-65 (requiring a plaintiff to show that she engaged in prohibited conduct *similar* to that of a person of another race, color, sex, religion, or national origin); Bryant, 288 F.3d at 133 (requiring a plaintiff to demonstrate that other employees outside the protected class were retained under *similar* circumstances). Here,

*PJG*

McDuffie-Smithson concedes that Caucasian employees who also misused their University-issued credit cards by purchasing personal items were similarly terminated. Thus, any claim of disparate treatment based on race fails.

With regard to her harassment claim, she also cannot establish a *prima facie* case. Title VII prohibits creating or allowing a hostile work environment based on race, color, religion, sex, or national origin. See E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 668 (4th Cir. 2011); Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006). Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks & citations omitted). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008). Moreover, as stated above, Title VII is not a "general civility code." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 335 (4th Cir. 2010).

To make out a hostile work environment under Title VII, a plaintiff must show that (1) she experienced unwelcome harassment; (2) the harassment was because of her race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. See Bonds v. Leavitt, 629 F.3d 369, 385 (4th Cir. 2011). To meet the second element, a plaintiff must show that "but for" her race, she would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). The federal anti-discrimination statutes do not protect employees from hostility and abuse unless the objectionable conditions occur because of a protected characteristic.

PJG

See Graham v. Prince George's Cnty., 191 F. App'x 202, 204 (4th Cir. 2006) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80. When analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard). For the fourth element of the *prima facie* case where the alleged harassers are the plaintiff's co-workers, the plaintiff must show that the employer "knew or should have known about the harassment and failed to take effective action to stop it."[1] Sunbelt Rentals, Inc., 521 F.3d at 319 (internal quotation marks & citations omitted).

The record does not support a finding of a *prima facie* case of a hostile working environment based upon race. As an initial matter, McDuffie-Smithson herself attributes Cooper's alleged mistreatment of her to a cause other than her race, stating that Cooper's attitude toward her changed after a disagreement she had with Cooper following the death of a co-worker in July of 2008. (See; Pl.'s Dep. at 46-49, ECF No. 27-3 at 27-30); Lightner, 545 F.3d at 263-64 (finding that a plaintiff's

---

[1] Although McDuffie-Smithson generally alleges in her Complaint that her supervisor, Dr. Price, harassed her, there is no support in the record for this claim. See Howard v. Winter, 446 F.3d 559, 565 (4th Cir. 2006) (explaining the different standards applicable to imputing liability to an employer when the harasser is a supervisor versus a co-worker).

Page 8 of 12

PJG

repeated admission during litigation that the real reason for his suspension was to cover up department wrongdoing wholly undermined plaintiff's claim of race or gender discrimination under Title VII). The fact that Cooper's hostility toward McDuffie-Smithson admittedly did not commence until after the two women had been working together for over six months undermines McDuffie-Smithson's contention that the alleged harassment was because of her race.

Moreover, she cannot demonstrate that the alleged harassment was severe or pervasive. In her deposition, McDuffie-Smithson identified several remarks that she considered to be offensive: she related an incident where Dr. Price apparently disclaimed President Obama as "his" president, (Pl.'s Dep. at 103, ECF No. 27-3 at 48); an occasion where Cooper referred to the African American pop star Michael Jackson as a "pedophile," (Pl.'s Dep. at 104, ECF No. 27-3 at 49); and several occasions when Cooper called a co-worker a "bitch," in one instance preceding it with "black."[2] (Pl.'s Dep. at 40-42, ECF No. 27-3 at 47). Of these stray and isolated incidents, only one involves overtly racially offensive or insulting conduct, and none of them was directed at McDuffie-Smithson. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citations omitted); Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004) (affirming summary judgment on a hostile work environment claim where the record contained no evidence of racially offensive conduct toward the plaintiff); cf. Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently

---

[2] As the defendants point out, a claim based on these comments would appear to be time-barred in any event. (Def.'s Mem. Supp. Mot. Summ. J. at 11, ECF No. 27-1 at 11.)



severe or pervasive to survive summary judgment).  Finally, McDuffie-Smithson agrees that her contact with Cooper, the alleged harasser, was limited, and while they did not interact daily, when they did interact, the interaction averaged five to ten minutes during the course of a day.  (Pl.'s Dep. at 37, ECF No. 27-3 at 21.)  On this record, McDuffie-Smithson cannot show that she was subjected to an objectively severe and pervasive work environment because of her race.

Further, even if the conduct alleged rose to the requisite standard, the record shows no basis for imputing liability to the University.  First, although McDuffie-Smithson contends that she reported to Dr. Price that Cooper's behavior made her uncomfortable, she does not dispute that she never attributed Cooper's behavior toward her to her race.  (See generally Pl.'s Dep. Def.'s Ex. 8, ECF No. 27-4); Cordero v. Florida, No. 4:06cv529-SPM/AK, 2007 WL 2972988, at *6 (N.D. Fla. Oct. 9, 2007) (ADA) ("[A]lthough Plaintiff complained generally that [his supervisor] treated him poorly, he never complained about disability harassment. The [employer] cannot be held liable for failing to take prompt remedial action since Plaintiff did not put the [employer] on notice that he was being harassed because of his disability."); cf. Okoli v. City of Baltimore, 648 F.3d 216, 224 & n.8 (4th Cir. 2011) (Title VII retaliation) (finding that making a complaint of "harassment" and providing a description of the behavior at issue constituted protected activity under Title VII of which the employer should have known even though the complaint did not use "magic words" identifying the specific trait (gender) protected under Title VII).  As stated above, McDuffie-Smithson herself attributes Cooper's change in attitude toward her to a reason other than race.  (See Pl.'s Dep. at 46-49, ECF No. 27-3 at 27-30.)  Accordingly, no basis exists to impute liability for

PJG

Cooper's actions to the University. See Sunbelt Rentals, Inc., 521 F.3d at 319; Howard, 446 F.3d at 567 (discussing the requirements to impute liability to an employer for harassment by a co-worker).

Finally, even if McDuffie-Smithson could establish a *prima facie* case of disparate treatment or harassment based upon her race or of retaliation, the defendants have offered a legitimate, nondiscriminatory reason for her termination—misuse of the credit card and falsification of receipts—and McDuffie-Smithson has presented absolutely no evidence to support her speculation that this reason was a pretext for discrimination or retaliation. See Merritt, 601 F.3d at 294.

## RECOMMENDATION

For all of the foregoing reasons, the defendants are entitled to summary judgment as to all of the claims raised in the Complaint. The court therefore recommends that the defendants' motion be granted. (ECF No. 27.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 19, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).